IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01728-MSK-KMT

JONATHAN HARRIS,

          Plaintiff,

v.

COMMERCE CITY, and
KEVIN LORD,

          Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND MOTION
FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss

and Motion for Summary Judgment **(# 35)**, the Plaintiff's response **(# 45)**, and the Defendants'

reply **(# 61)**.

## FACTS

The Amended Complaint **(# 2)** is lengthy, disjointed, and often conclusory, but it

contains the following  operative factual allegations.  For purposes of the determination of this

motion, the Court accepts them as true.

After the dissolution of a romantic relationship between Mr. Harris and Shauna Jenkins,

Mr. Harris made "attempts to reconcile differences in the settlement of damage claims" arising

from a residence they had previously shared.  Ms. Jenkins apparently complained about Mr.

Harris' attempts at communications to her mother, who, in turn, brought the issue to the attention

of Defendant Lord, a Commerce City Police Officer.  On or about August 27, 2008, Mr. Lord arrested[1] Mr. Harris on charges of assault, harassment, and domestic abuse.  On February 23, 2009, Mr. Harris was acquitted of all charges by a jury.  He then commenced this action against Mr. Lord and Commerce City.[2]

Mr. Harris asserts six causes of action: (i) common-law malicious prosecution against Mr. Lord; (ii) common-law false arrest against Mr. Lord; (iii) common-law false imprisonment against Mr. Lord; (iv) common-law defamation against Mr. Lord; (v) negligence in performance of duties against Mr. Lord; (vi) civil conspiracy, in that Mr. Lord and former Defendants Jenkins and Lutz "schemed and acted in concert to apply undue pressure and threats of a arrest and prosecution to deprive [Mr. Harris] of [his] dignity, freedom and other civil rights"; (vi) a violation of 42 U.S.C. § 1983, asserted against both Mr. Lord and Commerce City, for deprivation of rights of his 4th and 14th Amendment rights to be free from unreasonable searches and seizures, his 6th and 14th Amendment rights to be advised of the charges against him, and his 14th Amendment rights to Due Process and Equal Protection.[3]

Mr. Lord and Commerce City move **(# 35)** to dismiss certain claims pursuant to Fed. R. Civ. P. 12(b)(6), and seek summary judgment on the remainder of Mr. Harris' claims. Specifically, Mr. Lord and Commerce City argue: (i) the defamation claim should be dismissed

---

[1] The evidentiary record in this case indicates that Mr. Lord directed that Mr. Harris be arrested, but did not himself participate in the actual arrest.

[2] A number of additional Plaintiffs and Defendants have resolved their respective claims, leaving only Mr. Harris' claims against Mr. Lord and Commerce City for adjudication.  Mr. Harris has also resolved all of his common-law claims against Commerce City, leaving only a claim under 42 U.S.C. § 1983 against that entity.  *Docket #*

[3] Mr. Harris' motion papers concede that no Equal Protection claim is cognizable here.

because Mr. Harris has not pled any facts linking Mr. Lord to any defamatory statement; (ii) the negligence claim should be dismissed because Mr. Harris failed to plead any facts showing the existence of a legal duty owed by Mr. Lord to him; (iii) the civil conspiracy claim should be dismissed because Mr. Harris pleads only conclusory assertions of an agreement and concerted action; (iv) Mr. Lord and Commerce City are entitled to summary judgment on the § 1983 claim because Mr. Harris cannot demonstrate that his arrest was effected without probable cause and that, at the time, there was no "clearly established" law requiring Mr. Lord to refrain from effecting an arrest in these circumstances; because Mr. Harris has failed to identify similarly-situated persons treated more favorably so as to support an Equal Protection claim; and Mr. Harris fails to plead facts showing a violation of the 6th Amendment in these circumstances; (v) Mr. Lord is immune from tort claims arising out of the arrest pursuant to C.R.S. § 18-6-803.6(5) because Mr. Harris cannot show that Mr. Lord acted with malice and bad faith; (vi) the Court lacks jurisdiction over the tort claims under the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.,* as Mr. Harris cannot show that Mr. Lord's actions were willful and wanton; (vii) Mr. Lord is entitled to summary judgment on the malicious prosecution claim because he effected the arrest with probable cause and because Mr. Harris cannot show the required element of malice; (viii) Mr. Lord is entitled to summary judgment on the false arrest and false imprisonment claims because Mr. Lord had probable cause to effect the arrest; and (ix) Mr. Lord is entitled to summary judgment on the civil conspiracy claim because Mr. Lord was legally entitled to perform the underlying predicate objects of the conspiracy – to effect the arrest and imprisonment of Mr. Harris.

## ANALYSIS

**A. Motion to Dismiss**

1. Standard of review

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its consideration to the four corners of the Amended Complaint,[4] any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a

---

[4]Both sides have included extensive factual recitations in their motion briefing. Such factual discussion might be appropriate with regard to those claims for which the Defendants seek summary judgment, but for those claims in which the Defendants seek dismissal under Rule 12(b)(6), the Court has ignored the factual supplements in the motion papers and looks only to the facts as asserted in the Amended Complaint.

Rule 12 analysis.  A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S.Ct. at 1949.  The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation."  *Id.* at 1949-50.  Moreover, the facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct.[5]  *Id.*  One way in which the Court might conduct its analysis is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them.  Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.

---

[5]The Supreme Court took pains to ensure that the word "plausible" is understood to mean that the plaintiff has a demonstrable and concrete belief that a wrong has been committed and the defendant is the person responsible, as opposed to a set of facts in which a wrong might possibly and hypothetically be ascertained, and the defendant might, hypothetically, be a person who might have been responsible for that wrong.  For example, in *Twombly*, the Court observed that the plaintiff in an antitrust case had sufficiently pled as a fact that two defendants had engaged in "parallel behavior."  However, it found that while parallel conduct <u>might</u> be consistent with the required element of an agreement between the two defendants, "it was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior." 550 U.S. at 567.  Thus, "the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement."  *Id.* at 570.

Cases such as *Twombly* and *Iqbal* make clear that the "plausibility" requirement is not an invitation to this Court to speculate as to whether well-pleaded facts alleged by the pleader are likely to be proven true or not.  In this sense, "plausible" is not the synonym of "believable."

2.  <u>Claims for which Rule 12(b)(6) dismissal is sought</u>

**(i) Defamation**

Mr. Lord seeks dismissal of the defamation claim, arguing that the Amended Complaint does not allege that Mr. Lord made any of the allegedly defamatory statements.

To establish a claim for defamation under Colorado law, Mr. Harris must show: (i) a defamatory statement; (ii) published to a third party; (iii) scienter amounting to at least negligence on the part of the speaker; and (iv) special damages suffered by the plaintiff or actionability at law regardless of the existence of special damages. *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009). Under Colorado law, a statement is defamatory when it "holds an individual up to contempt or ridicule and causes injury or damage." *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. App. 2005). The statement must necessarily be an assertion that is capable of being true or false, as falsity of the statement is a *sine qua non* of a slander claim. *See e.g. McIntyre v. Jones* 194 P.3d 519, 528 (Colo. App. 2008) ("If the statement is true, it is not actionable . . .").

Mr. Lord is correct that the factual allegations in the "Defamation" section of the Amended Complaint do not mention him. Paragraph 61 alleges that Ms. Jenkins published "untrue derogatory statements and false accusations concerning [Mr.] Harris" by "accus[ing] him of criminal conduct and [making] statements designed to expose [him] to false arrest and prosecution." Paragraph 62 states that former Defendant Lutz "continued publication of the defamatory remarks by publishing" those same statements, and that she "used her seniority and supervisory influence [to] falsely accuse [Mr.] Harris of criminal conduct." Paragraph 63 recites an incident in which Mr. Harris' parents called a 911 dispatch office, and former Defendant

Lodge "ma[d]e disparaging comments about the personality and physical description" of Mr. Harris' parents. Paragraph 64 alleges that former Mr. Lodge, "on behalf of [former] defendants Lodge and Lutz," referred to Mr. Harris' parents as "assholes." Paragraph 65 alleges that Mr. Lodge did so with the intent to humiliate Mr. Harris' parents and to "promote the arrest of [Mr.] Harris"; paragraph 66 further alleges Mr. Lodge's intent; paragraph 67 alleges that these communications caused harm to Mr. Harris and his parents; paragraph 68 again references Mr. Lodge "act[ing] in an offensive manner"; paragraph 69 alleges causation of damages as a result of Mr. Lodge's behavior; and paragraph 70 again references the Mr. Harris' damages. Nowhere in the articulation of the defamation claim is Mr. Lord mentioned, expressly or inferentially.

In response to the Motion to Dismiss, Mr. Harris argues that "because [Mr.] Lord failed to investigate the truth of the information received from Jenkins and Lutz, Lord negligently conveyed false and defamatory content." Mr. Harris goes on to acknowledge, however, that "There is currently insufficient information upon which to conclude that Lord conspired or negligently published defamatory conduct." Putting aside what appears to be a fundamental inconsistency between the two quoted sentences, the Court finds Mr. Harris' argument unavailing for numerous reasons.

First, as noted above, the Amended Complaint contains no specific allegation[6] that Mr. Lord ever published any statement about Mr. Harris to anyone. Second, even if the Court were to infer that Mr. Lord "published" some statement concerning Mr. Harris in the course of

---

[6]Mr. Harris cites to several paragraphs in the Amended Complaint as alleging Mr. Lord's publication of defamatory material about him. The Court finds that each of the cited paragraphs contains nothing more than vague and conclusory statements, not allegations of fact sufficient to support a claim under *Twombly* and *Iqbal*.

effecting Mr. Harris' arrest, the Court cannot ascertain from the Amended Complaint what the contents of such a statement were or who it was published to, much less determine that such an allegation sufficiently pleads the elements of a claim for defamation. Third, even assuming that Mr. Lord made statements that falsely accused Mr. Harris of engaging in criminal conduct, the Amended Complaint makes clear that such statements were made by Mr. Lord in the course of effecting Mr. Harris' arrest.

As a general rule, statements made by police officers in the course of effecting an arrest and memorializing the circumstances justifying that arrest in an affidavit are privileged to some extent, either completely precluding claims of defamation by the arrestee or requiring the arrestee to plead and prove special circumstances, such as malice of the arresting officer. *See e.g. Sietins v. Joseph*, 238 F.Supp.2d 366, 378-79 (D. Mass. 2003) (police officers' statements absolutely privileged); Restatement (Second), <u>Torts</u>, § 587-88 (absolute privilege in statements preliminary to initiation of judicial proceedings), *see also id.*, § 592 (absolute privilege against defamation where law compels a speaker to publish the statement); *compare Micalizzi v. Ciamarra*, 206 F.Supp.2d 564, 582-83 (S.D.N.Y. 2002) (finding arrestee's defamation claim against police officer subject to qualified privilege, requiring arrestee to plead and prove malice in order to overcome privilege). Without determining to what degree Mr. Lord's statements are privileged under Colorado law, to the extent that they are privileged at all, Mr. Harris' conclusory assertions of Mr. Lord's knowledge and intent would not be sufficient to overcome such privilege. Thus, for many reasons, the Amended Complaint fails to sufficiently plead a defamation claim against Mr. Lord, and thus, the defamation claim is dismissed pursuant to Rule 12(b)(6).

### (ii) Negligence

Under Colorado law, a party asserting negligence must plead facts showing that: (i) the defendant owed the plaintiff a legal duty to conform to a certain standard of care; (ii) the defendant breached that duty; (iii) the plaintiff suffered damages; and (iv) the damages were caused by the defendant's breach. *Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009).

At the very outset, the Court has some doubt that a negligence claim against a police officer arising out of the police officer's alleged failure to properly carry out his duties can ever be cognizable in Colorado. The Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.*, provides that public employees acting within the scope of their employment are immune from tort claims unless either: (i) the tort falls within specified statutory categories for which immunity is not available, C.R.S. § 24-10-106; (ii) the public entity has waived governmental immunity in the situation, or (iii) the officer's act is shown to have been willful or wanton. C.R.S. § 24-10-118(2)(a). Here, only the last category is even applicable, and an allegation that Mr. Lord engaged in "willful" misconduct in effecting the arrest is inconsistent with an allegation that he was simply negligent in doing so.

Mr. Lord contends that Mr. Harris has not alleged facts showing that Mr. Lord had any legally-recognized duty to Mr. Harris. Mr. Harris responds by citing general principles of Colorado law governing the existence of legal duties, and then contends that "when viewed in light of the Commerce City Police Policy and Procedures Manual . . . the facts are sufficiently alleged to overcome the motion to dismiss." However, the Commerce City Police Policy and Procedures Manual is neither attached to nor referenced in the Amended Complaint, and thus, is

not properly before the Court on a motion to dismiss.[7]  In its absence, the existence of a legal

duty owed by a police officer to a potential arrestee must be predicated upon Colorado law.  Mr.

Harris cites to no cases in which courts have recognized such a duty giving rise to a negligence

claim, and indeed, in light of statutory protections such as the Colorado Governmental Immunity

Act, it appears unlikely that Colorado law would recognize any legal duty owed by police

officers in this circumstance.  *See e.g. Aztec Mineral Corp. v. Romer*, 940 P.2d 1025, 1031

(Colo. App. 1996) (recognizing that Colorado Governmental Immunity Act superseded ruling in

*Leake v. Cain*, 720 P.2d 152, 160 (Colo. 1986), that liability of public entity for negligence

should be determined "in the same manner as if it were a private party").

Because the Court finds that Mr. Harris has failed to plead facts showing that a police

officer owes a legal duty to an arrestee sufficient to support a claim for negligence, Mr. Lord is

entitled to dismissal of the negligence claim against him.

### (iii) Civil conspiracy

To plead a "claim"[8] for civil conspiracy, Mr. Harris must allege: (i) that two or more

---

[7]In any event, the provisions of the Commerce City Police Manual cited by Mr. Harris reference internal police department policies.  Breach of these duties might give rise to internal punishment by police supervisors, but the mere fact that internal policies exist does not suffice to convert those policies into legally-recognized duties that may be enforced by citizens through tort law.

[8]Although courts often refer to civil conspiracy as a "claim," it is not truly a substantive cause of action.  Conspiracy is a "derivative cause of action that is not actionable per se,"; it is essentially a legal theory by which one defendant can be held liable for substantive wrongs committed by another.  *See Double Oak Const., LLC v. Cornerstone Development Intl. LLC*, 97 P.3d 140, 146 (Colo. App. 2003).  For example, if Mr. Harris could not show that Mr. Lord himself performed a certain unlawful act, but that Mr. Lord entered into an agreement with someone else by which that person would perform the unlawful act, the doctrine of civil conspiracy might allow Mr. Harris to hold Mr. Lord liable for damages caused by the other person's conduct.

persons; (ii) entered into an agreement, expressly or through their conduct; (iii) to accomplish a particular objective; (iv) that one of the parties to the agreement engaged in one or more overt acts in furtherance of the agreement; and (v) that Mr. Harris suffered damages as a result. *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006). Either the overt acts themselves must be unlawful, or the purpose of the conspiracy must be unlawful. *Margin v. DVCO Fuel Systems, Inc.*, 981 P.2d 673, 675 (Colo. App. 1999); *Double Oak*, 97 P.3d at 146.

Mr. Harris' conspiracy claim is defective for two independent reasons. First, it fails to plead sufficient facts – as opposed to mere conclusions – to state a claim under the analysis directed by *Twombly* and *Iqbal*. The Amended Complaint pleads nothing more than legal conclusions – that "defendants agreed by words or conduct to accomplish unlawful goals," that "defendants schemed and acted in concert to apply undue pressure and threats of a arrest" – devoid of any specific factual averments from which that conclusion could be derived. For example, Mr. Harris does not explain <u>how</u> he reached the conclusion that the "defendants agreed by words or conduct to accomplish" a particular goal. Mr. Harris seems to believe that, because there were multiple persons involved in the chain of events that brought about his arrest, those persons must have acted in concert. Like the allegation of "parallel behavior" in *Twombly*, simply asserting action that might appear to have been concerted is insufficient to allege the well-pleaded fact of an agreement to act in concert. 550 U.S. 567, 570. Thus, without some articulation of <u>facts</u> that would plausibly demonstrate that Mr. Lord agreed, expressly or tacitly, with others to effect an arrest of Mr. Harris that the parties knew would otherwise be unlawful, Mr. Harris has failed to sufficiently plead a claim for civil conspiracy.

Moreover, as elaborated upon below, Mr. Harris' civil conspiracy claim also fails

because he cannot show that Mr. Lord engaged in either an illegal overt act or that the object of the conspiracy was unlawful. For reasons discussed *infra.*, the Court finds that the undisputed facts show that Mr. Lord had probable cause to effect a valid arrest of Mr. Harris for harassment. Because the overt act alleged herein – Mr. Lord effecting Mr. Harris' arrest – was lawful and the alleged objective of the conspiracy – having Mr. Harris arrested – was lawful, no liability for conspiracy may lie. *Double Oak*, 97 P.3d at 146 (use of concerted, albeit lawful, means to accomplish a lawful objective cannot give rise to liability for conspiracy).

Accordingly, Mr. Lord is entitled to dismissal of the civil conspiracy claim.

### B. Motion for Summary Judgment

#### 1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. In considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring

the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. Merits

The Court will not examine each of the remaining claims in detail, as it is apparent that nearly all of the claims share a central factual issue: whether Mr. Harris' arrest was based on probable cause. Mr. Harris' briefing appears to concede that, with few exceptions, his claims cannot be maintained if Mr. Lord did indeed have probable cause to effect the arrest.

The "probable cause" standard is incapable of precise definition or quantification because it deals with probabilities and depends upon the totality of the circumstances. *Maryland v.*

*Pringle*, 540 U.S. 366, 371 (2003). Generally, probable cause for an arrest exists when the "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Mink v. Knox*, ___ F.3d ___, 2010 WL 2802729 (10th Cir., July 10, 2010) (slip op.), *citing Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009). This standard makes clear that, in assessing whether Mr. Lord had probable cause to arrest Mr. Harris, the Court must examine the facts <u>as they appeared to Mr. Lord</u> at the time the decision to arrest was made.

Mr. Lord has submitted an affidavit that states that on August 27, 2008, he responded to Ms. Jenkins' residence in response to a complaint of possible domestic violence and harassment. He states that he met with Ms. Jenkins, whom he acknowledges is the daughter of a family friend. Ms. Jenkins reported to Mr. Lord that she had previously lived with Mr. Harris in Arizona, but the relationship ended in May 2008 after Mr. Harris had been verbally and physically abusive. Ms. Jenkins stated that in June 2008, Mr. Harris moved to Colorado, and since then, he had made repeated threatening and harassing phone calls to her. She stated that on that evening, she had received 12 phone calls from Mr. Harris, each of which showed that Caller ID information had been deliberately blocked. [9] (Ms. Jenkins received another call of this type

---

[9]Mr. Lord's affidavit in support of warrantless arrest, dated the following day, August 28, 2008, reports that "[Ms.] Jenkins contacted her cell phone provider . . and requested them to provide her the information on the calls she received from the blocked number." According to Ms. Jenkins, the cell phone company advised her that they were unable to obtain such information because the caller was also on the same cell service and thus "it's blocked in their system as well." It is not clear from the record whether Mr. Lord was aware of this fact before he requested Mr. Harris' arrest on the evening of August 27, 2008, or whether this information came to his attention the following day.

while talking to Mr. Lord.  When Mr. Lord answered the phone, the caller hung up without speaking.)  Ms. Jenkins stated that during the last call, when she asked Mr. Harris to stop calling her, Mr. Harris had become angry and yelled "watch your back."  On another occasion, Mr. Harris had also told her that her brother "needs to die with a bullet between his eyes."  Ms. Jenkins also reported to Mr. Lord that Mr. Harris had physically followed her on July 12, 2008, blocking her car in a parking lot and asking her "where do you think you're going?," and on another occasion in July 2008, going to her place of work and yelling at her from the parking lot, calling her a "slut" and a "whore." Ms. Jenkins also produced a letter she had sent to Mr. Harris on July 28, 2008 (including a certified mail receipt demonstrating Mr. Harris' receipt of the letter), stating that she wished to have no further communications with him.  Upon receiving this information, Mr. Lord called Mr. Harris and asked about Ms. Jenkins' allegations.  Mr. Harris responded "I haven't talked to [Ms. Jenkins] in the last three months, and she cannot prove that I called her.  I don't appreciate being threatened, and this phone call is being taped.  I haven't called her and she can't prove it," then hung up.  Mr. Harris' summary judgment response does not dispute any of the assertions that Mr. Lord makes regarding what Ms. Jenkins told (or showed) Mr. Lord, nor does it materially dispute Mr. Lord's version of his telephone discussion with Mr. Harris.[10]

Based on this information, Mr. Lord states that he had probably cause to arrest Mr. Harris because he had committed the offense of harassment, C.R.S. § 18-9-111, and domestic violence,

---

[10]Affidavits from Mr. Harris, as well as his parents, who were listening in on the call from Mr. Lord, confirm Mr. Lord's statement that Mr. Harris denied having recent contact with Ms. Jenkins and stated that he was taping the phone call.  The affidavits also recite that Mr. Lord made a variety of statements to Mr. Harris, instructing him not to contact Ms. Jenkins further and threatening him with arrest if he did so.

C.R.S. § 18-6-800.3. The crime of harassment occurs when, among other things, a person, acting with the "intent to harass, annoy, or alarm another person," engages in a variety of acts, including "in a public place directs obscene language or makes an obscene gesture to or at another person," "follows a person in or about a public place," "initiates communication with a person, anonymously or otherwise, by telephone . . . in a manner intended to harass or threaten bodily injury," or "repeatedly . . . makes communications in offensively coarse language to another in a manner likely to provoke a violent or disorderly response." C.R.S. § 18-9-111(1)(a)-(h). Alternatively, the crime occurs when a person "repeatedly follows . . ., contacts, . . . or makes any form of communication with another person . . . in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress." C.R.S. § 18-9-111(b). Under C.R.S. § 18-6-800.3, "domestic violence" occurs when a person commits "any other crime against a person . . . when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor . . . has been involved in an intimate relationship."[11]

From this record, the Court finds that there is no genuine dispute of fact concerning what information Mr. Lord had at the time he decided to arrest Mr. Harris, and that, on this record, Mr. Lord had probable cause to arrest him. Ms. Jenkins' statements clearly indicated that Mr. Harris had committed the crime of harassment by, among other things, directing obscene

---

[11]"Domestic violence" is not a substantive crime. C.R.S. § 18-6-801 provides for certain sentencing enhancements and other penalties when a person is convicted of a substantive crime that has characteristics that bring it within C.R.S. 18-6-800.3's definition of "domestic violence." Thus, a substantive crime such as harassment may, if committed to intimidate or exact revenge against a former intimate partner, also be a "domestic violence" offense under C.R.S. § 18-6-800.3.

language ("slut," "whore") at her in a public place, following her, communicated via telephone with her in a threatening or harassing way, and followed and physically confronted her in a way which would likely cause emotional distress. A reasonable person possession of Ms. Jenkins' statements would certainly conclude that the crime of harassment had been committed.

The Court does not understand Mr. Harris to argue otherwise – that is, Mr. Harris does not seem to dispute that, if Mr. Lord deemed Ms. Jenkins' statements trustworthy, he could have concluded that Mr. Harris had committed the crime of stalking.

Mr. Harris' contention on this point is that Mr. Lord did not perform a <u>complete</u> and impartial investigation before directing the arrest. Mr. Harris contends that, after hearing from both Ms. Jenkins and Mr. Harris, Mr. Lord was faced with conflicting statements that warranted further examination before probable cause could arise. Had Mr. Lord done so, Mr. Harris argues, he would have discovered allegedly exculpatory evidence revealing that Mr. Harris was not responsible for the telephone calls and that Mr. Harris had an alibi for the other occasions in which he was alleged to have harassed Ms. Jenkins.

Although it may be true that a more thorough investigation might have cast Ms. Jenkins' allegations in a different light, the law does not require a police officer to complete a thorough investigation before electing to effect an arrest. In *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997), the plaintiff was arrested by a police officer after a visibly-injured victim approached the police officer, stated that he had been attacked without provocation, and identified the plaintiff as being the person who attacked him. The plaintiff strenuously insisted to the police officer that the victim had started the altercation and the plaintiff had acted only in self-defense. The officer arrested the plaintiff despite these protestations, and after the charges

were dropped, the plaintiff sued, claiming his arrest had been effected without probable cause.
*Id.* The plaintiff contended that, when faced with a fundamental factual dispute between the two participants to the altercation, the investigating officer "should have made further inquiries and interviewed witnesses at the scene" before concluding that he had probable cause to make an arrest. *Id.* Both the trial court and the 2d Circuit disagreed. "Although [the officer] would have been entitled to believe [the plaintiff's] version of events rather than [the victim's]," the Court of Appeals observed, "he was not required to do so. Given [the victim's] version of events and his visible injuries, a competent police officer could believe it was objectively reasonable to arrest plaintiff for the assault that had been committed." The court went on to explain that "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id.* So long as the alleged victim's version of events is plausible and there is some basis for the officer's decision to credit the victim's credibility, probable cause to arrest may lie even where the alleged perpetrator disputes the victim's contentions. *Id.*

Similar facts are present here. Ms. Jenkins' claims concerning Mr. Harris are plausible on their face; the phenomena of people harassing and stalking their former intimate partners is prevalent enough as to warrant comment even by the Colorado legislature. C.R.S. § 18-9-111(4)(a). Mr. Harris corroborated at least some minor details of Ms. Jenkins' charges, essentially admitting, tacitly or otherwise, that he had previously been involved in a romantic relationship with Ms. Jenkins and that the relationship had ended under adverse circumstances that left the two estranged and ostensibly non-communicative with each other. And Mr. Lord obtained physical evidence that corroborated other portions of Ms. Jenkins' assertions. She

produced a letter that had demonstrably been sent to and received by Mr. Harris, requesting that he cease further efforts to contact her, corroborating the general notion that Mr. Harris had previously persisted in attempting to communicate with Ms. Jenkins over her objections. And Mr. Lord states that, while he was discussing the issue with Ms. Jenkins, her cell phone rang from a call with a blocked Caller ID identification and the person calling hung up as soon as Mr. Lord answered the phone. This incident corroborates Ms. Jenkins' assertion that someone had called her numerous other times that evening with a blocked Caller ID identification. Under these circumstances, Mr. Lord obtained not only allegations from Ms. Jenkins that Mr. Harris had committed the crime of harassment, but he also obtained evidence corroborating Ms. Jenkins' assertions in several respects. Under these circumstances, the Court finds that Mr. Lord had probable cause to direct Mr. Harris' arrest without having to conduct a further investigation.

Although a police officer need not conduct a comprehensive investigation before effecting an arrest, the officer may not choose to ignore obviously exculpatory information that is tendered to him, refuse to obtain easily discoverable facts bearing on the alleged crime, or conduct his investigation in a biased manner, *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004). Here, the record here does not suggest that any of these problems were present. Mr. Harris does not contend that he tendered or even offered to tender any exculpatory evidence to Mr. Lord; in his phone call with Mr. Lord, he merely denied Ms. Jenkins' allegations and contended that her allegations could not be proven. Mr. Harris does not contend that evidence such as Ms. Jenkins' telephone records were readily accessible to Mr. Lord at the time he was making the decision as to whether to arrest, and indeed, the only evidence before Mr. Lord at that point in time was Ms. Jenkins' statement that telephone records would not be revealing. Mr.

Harris argues that Mr. Lord's investigation was biased because Mr. Lord was a family friend of Ms. Jenkins and her mother, but points to no actual evidence that would suggest that Mr. Lord's familiarity with Ms. Jenkins' family actually caused Mr. Lord to improperly credit or discredit information he was provided. Even if the Court were discount any familiarity with Ms. Jenkins' family, the facts she recited were sufficient to lead an objective person in Mr. Lord's circumstances to reasonably believe that Mr. Harris had committed a crime. Ms. Jenkins' allegations had sufficient external corroboration in many respects to entitle an objective police officer to find them credible. Accordingly, the Court finds that there is no dispute as to the information provided to Mr. Lord and that based thereon, he had probable cause to arrest Mr. Harris on August 27, 2008.[12]

This finding effectively disposes of all of Mr. Harris' claims, except his claim under 42 U.S.C. § 1983 to the effect that police officers utilized excessive force in arresting him and that he was deprived of his 6th Amendment right to be advised of the charges against him. With regard to the former, Mr. Harris' response offers no evidence to demonstrate use of excessive force during the arrest, and no evidence that Mr. Lord or Commerce City were involved in the decision by the Thornton Police Department officers of how much force to use in arresting him. him.

With regard to the contention that he was deprived of his 6th Amendment rights to be advised of the charges against him, Mr. Harris' argument is not well formed. He contends that he "asked several times to be informed of the charges for which he was being held" to no avail,

---

[12]It is further undisputed that a judge reviewed Mr. Lord's affidavit or warrantless arrest on August 29, 2008, and found probable cause to arrest and detain Mr. Harris. This fact alone would be dispositive of the question of whether probable cause existed for Mr. Harris' arrest.

but his affidavit makes clear that his requests were made "while in jail."  There is no evidence suggesting that Mr. Lord, a police officer with no apparent responsibility for supervising jailed detainees, was responsible for the failure to advise him of the charges against him.  Likewise, Mr. Harris' motion contains no argument whatsoever that would implicate Commerce City in the failure to advise him of the charges.

Accordingly, the Court finds that the Defendants are entitled to summary judgment on all of Mr. Harris' remaining claims.[13]

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss and for Summary Judgment (**# 35**) is **GRANTED** in its entirety.  Judgment in favor of the Defendants shall enter contemporaneously with this Order.

Dated this 18th day of August, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

---

[13]The Court observes that the finding that Mr. Lord had probable cause to arrest Mr. Harris would also dispose of the substantive merits of those claims for which dismissal was granted under Rule 12(b)(6).